# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**David Black**

    v.

**Nancy A. Berryhill, Acting Commissioner, Social Security Administration**

Case No. 18-cv-015-PB
Opinion No. 2019 DNH 004

### MEMORANDUM AND ORDER

David Black challenges the Social Security Administration's denial of his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("SSDI"). He contends that the Administrative Law Judge ("ALJ") misapplied relevant law and failed to support his decision with substantial evidence. The Acting Commissioner, in turn, seeks an order affirming the ALJ's decision. Because the ALJ's decision does not adequately explain a discrepancy between Black's social limitations and the RFC assessment, I remand the case for further consideration.

### I. BACKGROUND

Black is a 51-year-old man with a GED. He has worked as a mail driver, tow truck driver, fire sprinkler installer, and truck driver. See Administrative Transcript (hereinafter "Tr.") 241, 276, 281-83.

Multiple professionals concluded that Black has social problems. In July 2014, Dr. Shannon Tromp, a licensed clinical

psychologist, interviewed Black and reviewed his records. Tr. 384. She noted no problems with understanding, memory, sustained concentration, or adapting to change. Tr. 387-88. He did, however, "present consistently with antisocial personality disorder." Tr. 387. Black self-reported that he "lost a few jobs punching people out" and explained that "if the boss says something I don't like I'm gonna let them know." Tr. 384. She noted Black was "socially appropriate with logical thought and cheerful affect" but that "he was very focused on telling his stories of aggressive behavior, he appeared to think they were funny and laughed while telling them." Tr. 386. She diagnosed him with intermittent explosive disorder and antisocial personality disorder and opined that he would have "significant difficulty" with social interaction "due to intermittent explosive, violent behavior, short temper, [and] antisocial personality." Tr. 388.

In 2015, Black underwent counseling for those issues. See Tr. 654-728. He went to the Mohave Mental Health Clinic in Kingman, Arizona to "learn to better manage [his] anger and process [his] divorce" and reported his symptoms as "anger issues" and "explosive behavior." Tr. 657. A few weeks later James Reyes performed a behavioral health assessment and diagnosed Black with intermittent explosive disorder, anti-social personality disorder, alcohol dependence, and cocaine

dependence.  Tr. 666.  Black declined treatment for substance abuse problems, and denied group treatment, peer support and vocational services, and a psychiatric referral.  Tr. 666.  He assented to a behavioral health service plan that was intended to improve his communication with others, help him better manage his emotions, and avoid fighting.  Tr. 681.

Black spoke with therapists on the phone or in-person seven times from April to July of 2015.  During one counseling session in July, the therapist, Laurie Modica, noted that Black "[m]et a girl when he was back home who told him she was pregnant and was doing drugs and this triggered him" and that he had been "drinking 15-18 beers a night to cope."  Tr. 686.[1]  The clinic did not indicate that Black's intermittent explosive disorder had abated when he was discharged.

State agency reviewing psychologist Dr. Stacy Koutrakos also found limitations caused by Black's social disorders.  See Tr. 90-104.  She concluded that Black had "moderate" difficulties in maintaining social functioning.  Tr. 96.  Dr. Koutrakos recommended a number of limitations on Black's social interactions.  She noted that his "ability to work in coordination with or in proximity to others without being

---

[1] The ALJ mistakenly states that "there are no records of ongoing treatment after May 2015."  Tr. 12.  This is incorrect, as I will explain in more detail.

3

distracted by them" was "moderately limited." Tr. 101. So too were his ability to "interact appropriately with the general public," his "ability to accept instructions and respond appropriately to criticism from supervisors," and his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. 101. Dr. Koutrakos opined that Black "would likely perform best in an environment with limited social contact." Tr. 101.

State agency reviewing psychologist Dr. Carol Mohney Norcross reached similar conclusions about Black's social problems. Tr. 139-154. Like Dr. Koutrakos, Dr. Mohney determined that Black was "moderately limited" in his ability to work "in coordination with or in proximity to others without being distracted by them." Tr. 150. Also like Dr. Koutrakos, Dr. Mohney found Black to be moderately limited in his abilities to interact appropriately with the general public, accept instructions and respond to supervisors, and get along with coworkers. Tr. 150. Again, Black was considered to "likely perform best in an environment with limited social contact." Tr. 151.

Black applied for benefits in March 2014 alleging disability as of July 2013 due to knee problems, anger disorder

4

and an unspecified mental health issue.[2]  Tr. 275.  His application was denied at the initial and reconsideration levels.  Tr. 89-154.  Before the Appeals Council denied his request for review, see Tr. 1-5, an ALJ held a hearing at which Black appeared pro se.  Tr. 6-23.  In January 2017, the ALJ found that Black was not disabled.  Id.  Black appeals from that decision.  See Tr. 20.

## II. **THE ALJ'S DECISION**

The ALJ's conclusion followed from his application of the five-step, sequential analysis required by 20 C.F.R. § 416.920(a).  See Tr. 9-18.  At step one, the ALJ found that Black had not engaged in substantial gainful activity since October 2, 2013, the alleged onset date of his disability.  See Tr. 11.  At step two, the ALJ determined that Black was severely impaired by antisocial personality disorder and degenerative changes to his knees and right shoulder.  Id.  He also determined that Black suffered from sleep apnea but that his condition should be characterized as only a non-severe impairment under the Social Security Act.  Tr. 12.

At step three, the ALJ found that Black's impairments, considered individually or in combination, did not qualify as a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P,

---

[2] The knee issue does not factor into my analysis, so I omit the medical history of that condition.

5

Appendix 1.  Tr. 13-14 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 616.920(d), 416.925 and 416.926).  Although the ALJ observed that Black's mental impairment caused mild restrictions in his activities of daily living and moderate difficulties in social functioning, he found that "the severity of the claimant's mental impairment also does not meet or medically equal the criteria of listing 12.08."  Id.

At step four, the ALJ determined that Black had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 416.1567(b) & 416.967(b), with limitations with respect to kneeling, crouching, crawling, and interaction with co-workers and the general public.  See Tr. 15.  Although the ALJ found that Black's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he concluded that Black's statements concerning the extent and effects of his symptoms were not "entirely consistent" with the record.  Tr. 16.  Among other things, the ALJ determined that Black's assertion that he could not work as a driver was inconsistent with his "self-report in March 2015" when he stated he had stopped working due to an argument with his boss.  Tr. 16.  In reaching his conclusion, the ALJ afforded "great weight" to the opinions of state agency reviewing psychologists Dr. Koutrakos and Dr. Mahoney, and the opinion of consultative psychologist Dr. Tromp.  Id.

Although the ALJ determined at step four that Black could not return to his past relevant work because it required medium exertional activity, Tr. 17, the ALJ found that Black was not disabled at step five because he could work as a price marker, a laundry sorter, or a mailroom clerk, all of which were jobs that existed in significant numbers in the national economy. Tr. 18.

### III. STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably

could support a different conclusion." Id. at 770. If, however, the ALJ derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," they are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. Furthermore, resolving conflicts in the evidence is the exclusive role of the ALJ. Id.

## IV. SOCIAL LIMITATIONS IN THE RFC

"[T]he ALJ must specify the evidentiary basis for his RFC determination." Canfield v. Apfel, 2001 DNH 078, 2001 WL 531539, at *5 (D.N.H. Apr. 19, 2001). This requires a logical bridge from the medical evidence to the RFC. Most importantly, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184 at *7; Floyd v. Berryhill, 2017 DNH 114, 2017 WL 2670732, at *3 (D.N.H. June 21, 2017).

Here, the ALJ's RFC assessment conflicted with the findings of "moderate social limitations" in the opinions of Dr. Koutrakos and Dr. Tromp. The ALJ's failure to explain that discrepancy constitutes reversible error. See Hafford v. US

8

Soc. Sec. Admin., 2017 DNH 060, 2017 WL 1134716, at *3 (D.N.H. Mar. 27, 2017).

Dr. Tromp, who performed a consultative examination, believed that Black's violent behavior, short temper, and anti-social personality would cause "significant difficulty" in social interaction. Tr. 388. Dr. Kotrakos, a non-examining agency reviewing physician, concluded that Black would have "moderate limitations in working in coordination or in proximity to others without being distracted by them." Tr. 101. And Dr. Mohney, a second non-treating, non-examining reviewer, concluded that Black would "likely perform best in an environment with limited social contact." Tr. 151. Every examining or reviewing professional concluded that Black had "significant difficulty" in social interactions or "moderate" limitations in social ability. No medical opinion concludes Black was free of social limitation. The RFC formulated by the ALJ, however, includes the ability to have "frequent interaction with co-workers," "occasional interaction with the general public" and unlimited interaction with supervisors. See Tr. 15. And the decision does not explain this discrepancy.

The ALJ states that he afforded "great weight" to the opinions of Drs. Koutrakos, Mahoney, and Tromp. Tr. 16. He offers, "I find the opinions of the State Agency reviewing physicians and psychologists to be persuasive in this case and I

9

adopt the rationale provided by these sources."  Tr. 17.  But the RFC says otherwise.

The ALJ's decision is inconsistent with those sources that received "great weight."  The ALJ's RFC provides that Black could have unlimited interactions with supervisors, frequent interactions with his co-workers and occasional interaction with the general public.  Tr. 15.  In contrast, the opinions of Mahoney and Koutrakos state that Black is "moderately limited" in his abilities to "accept instructions and respond appropriately to criticism from supervisors," and his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  Tr. 101, 150.  Both Koutrakos and Tromp recommend that Black "would likely perform best in an environment with limited social contact."  Tr. 101.  Meanwhile, Dr. Tromp diagnosed Black with intermittent explosive and antisocial personality disorders and believed he would have "significant difficulty" with social interaction "due to intermittent explosive, violent behavior, short temper, [and] antisocial personality."  Tr. 388.

The ALJ does not explain this disagreement.  He discounts the expert opinion testimony by noting that "there are no records of any ongoing mental health treatment."  Tr. 16.  But the absence of ongoing mental health treatment, without more, cannot trump positive and otherwise uncontradicted evidence of

10

social limitations presented by medical professionals.  See generally White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009).  Nor does he explain how he got from the Point A of the medical evidence to the Point B of the RFC.  Cf. Dube v. Astrue, 781 F.Supp.2d 27, 34-36 (D.N.H. 2011) (reversing ALJ decision for failure to discuss findings by state agency consultant contradicting ALJ's conclusion).

The Commissioner's objections are unavailing.  She insists that the ALJ's decision is not inconsistent with the opinion of Dr. Tromp that Black would have "significant difficulty" with social interaction.  But I do not see how a person who is "severely impaired" by antisocial personality disorder can have "frequent" interaction with co-workers.  Without a reasoned explanation for that incongruity, the decision is incomplete. "Where an ALJ's RFC assessment is at odds with a medical source opinion, he must explain his reasons for disregarding that opinion." Costa v. Astrue, 2010 WL 4365868, at *7 (D.N.H. Nov. 3, 2010) (citing SSR 96-8p).  That clarification ensures that the opinion does not "ignore[e] evidence" or "judg[e] matters entrusted to experts." Nguyen, 172 F.3d at 35.  It is lacking here.

I will remand this case to the ALJ so that an elaborated explanation can be provided.[3]

## V. ADDITIONAL ALLEGED DEFICINCIES

Black also asks that I remand the case because the ALJ: (1) failed to properly evaluate Black's pain complaints; (2) erred in his assessment of Black's credibility; and (3) ignored his obesity. See generally, Doc No. 9-1. Because I find that the social limitation issue merits remand, I will not address those latter complaints.

## VI. CONCLUSION

The ALJ's RFC assessment conflicts with medical source opinions and that conflict is not sufficiently explained. I deny the Acting Commissioner's motion to affirm (Doc. No. 10) and grant David Black's motion to reverse (Doc. No. 9) pursuant to sentence four of 42 U.S.C. § 405(g), to the extent that the case is remanded to the ALJ for proceedings consistent with this

---

[3] The ALJ also misread the medical evidence before him. The decision states that "there are no records of ongoing treatment [at Mohave Clinic] after May 2015." Tr. 12. Not so. On June 3, 2015, Black had a 30-minute call with Modica "for support" where they discussed his family issues and relaxation strategies. Tr. 690. On June 25, 2015, Modica and Black exchanged phone messages. Tr. 688. On July 7, Black came in for a 60-minute session that ended with Modica helping him process discharge paperwork. Tr. 686. It is unclear to what extent that error affected the ALJ's decision, but the mistake should be remedied on remand.

12

order.  The clerk is directed to enter judgment accordingly and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

January 7, 2019

cc: Daniel W. McKenna, Esq.
    Kevin Parrington, Esq.